WESTERN MINERAL WOOL & INSULATING FIBRE CO. v. GLOBE MINERAL WOOL CO.

(Circuit Court, D. West Virginia. June 25, 1896.)

PATENTS—INVENTION—ANTICIPATION—PROCESS FOR MAKING MINERAL WOOL.
The Rockwell patents, Nos. 447,360 and 452,733, for process of manufacturing mineral wool by remelting hardened slag or scoria from smelting furnaces, with lime and silica, or silica and lime-bearing stone, and blowing the same into mineral wool, show useful and patentable invention, and were not anticipated by the Brodmer patent, No. 70,510, or the Player & McAllister patent, No. 103,650.

This was a suit in equity by the Western Mineral Wool & Insulating Fibre Company against the Globe Mineral Wool Company for alleged infringement of letters patent Nos. 447,360 and 452,733, issued to Charles H. Rockwell on March 3, 1891, and May 19, 1891, respectively, for process of manufacturing mineral wool.

Chilton & Thayer and W. J. Townsend, for complainant.

J. L. Parkinson and Ewing, Melvin & Ewing, for defendant.

GOFF, Circuit Judge. This is a suit in equity, in which the defendant is charged with infringing two letters patent of the United States, owned by the complainant. One of them, No. 447,360, dated March 3, 1891, was issued to Charles H. Rockwell, and by him, on the 9th day of March, 1891, duly assigned to the complainant. By the first of said patents, there was granted to the patentee, his heirs and assigns, the exclusive right of manufacturing mineral wool in accordance with the process claimed therein, which was (claim 1) by remelting hardened slag or scoria from a smelting furnace, with lime and silica, or silica and lime-bearing stone, mixed in the proper proportions, and blowing the same into mineral wool, substantially as described; (claim 2) the process of manufacturing mineral wool, consisting of remelting hardened slag or scoria from a smelting furnace, with lime or lime-bearing stone, mixed in proper proportions, and blowing the same into mineral wool. The said second-mentioned patent granted to the patentee the right to the process, in the manufacture of mineral wool, of melting in a cupola hardened slag or scoria, with silica or silica-bearing stone, mixed in proper proportions, and converting the same into mineral wool. The defenses are anticipation, nonpatentability, and noninfringement.

Defendant insists that by printed publications, as well as by prior knowledge, and universal use for many years by others, it is shown the process described in complainant's patents was not novel at the time of its alleged invention. The publications referred to—to wit, Enc. Brit. (9th Ed.); Literary Dig. 1895; Engineering & Mining Journal, 1872—do not, in my judgment, sustain this contention. They show the use to which slag can be put, and how mineral wool has been and can be made from it, but do not even remotely discuss or suggest the process included in the first Rockwell patent. Complainant admits, and it is a fact well known, of which the court will take judicial notice, that mineral wool has been for many years manufactured from the slag taken from blast furnaces; but it must be conceded that the process of manufacture resorted to before the discovery now protected by the Rockwell patent of March 3, 1891, was very different from that described in said patent. Formerly, the slag, in molten condition, as it came from the blast furnace,— a residuum,—and before it had cooled, was subjected to a hot-air blast or steam jets, and the wool then used produced. No other process was then known or used. At that time there was no way known or in use by which the cold slag could be remelted or used. It was to overcome this difficulty that Rockwell made his experiments, and the process patented by him is the result. Formerly the successful operation of a mineral wool plant depended on the continuous running of a blast furnace from which molten slag could be taken. If the furnace was not in blast, mineral wool could not be made. All prior attempts to remelt slag which had become hardened by cooling, and then use it successfully in the making of min-

eral wool, had failed. There is no evidence that such slag was ever profitably worked into mineral wool until after it was mixed with lime, in the manner indicated by the Rockwell patent. Some slag which, when in melted condition fresh from the furnace, could be converted into mineral wool, would not, when remelted, produce such wool until such mixture was added; and the character of the mixture depended upon the quality of the slag, which in some cases required lime, and in others silica. The mineral wool so obtained was of better quality, better color, freer from impurities, and commanded better price in the market. The testimony on these points is clear and uncontradicted. The only process now used in the making of mineral wool is that described in the Rockwell patents, and it is plain that they have entirely revolutionized the method of manufacturing it.

The claim of defendant as to "prior description," in the patents to John James Brodmer, dated November 5, 1867 (No. 70,510), and to Augusta Amelia Player and Henry McAllister, Jr., administrators, dated May 31, 1870 (No. 103,650), is without merit. The former relates to the production of a cement, and contemplates the use of slag as it is received from the furnace in a fluid or semifluid state. This patent used slag as it came from the furnace, while the Rockwell patent takes and utilizes the slag that has been thrown away as useless. The one uses molten slag fresh from the furnace, before it has cooled, and adds to it unslacked lime, for the purpose of making a cement; and the other takes hardened slag, and using with it lime or silica, or lime and silica-bearing stone, or both, fuses the combination in a cupola, and, blowing with a steam jet, produces mineral wool, using for the said mixture certain proportions or per cents not required to be now set forth.

It will not be necessary to examine in detail the other patents relied upon by defendant on this point. I do not find that they sustain the contention we are now considering. I conclude that there is novelty and invention in the Rockwell patents, now owned by the complainant. The previous process—the prior art—related to an entirely different method of manufacturing mineral wool from slag. The Rockwell improvements have been productive of most beneficial results, not only to the owners thereof, but to the consumers of mineral wool, as well as to the owners of the raw material thereof, which otherwise in many cases would remain useless articles. The claim is now made, as has frequently been the case, that the process covered by the invention is so plain and simple as to exclude the possibility of inventive genius. But why was it never resorted to before if so simple? Why not used if so plain? It may be simple, yet, nevertheless, an invention; and, while now very plain, it is still meritorious. Evidently, the patentee has produced something new and useful, the benefits of which have been enjoyed by the public ever since he promulgated it. The process described in the patents has clearly assisted in the manufacture of mineral wool, and greatly benefited the particular art to which it relates. If it was to-day eliminated, the formula lost, and the method of procedure

forgotten, would not the public suffer a loss? I think so; and hence it follows that the owners of the patents in suit are entitled to the benefits of the same.

Without further discussing the questions involved, it follows from what I have said that there is no merit in the defense, that the process described had not been anticipated, and that it was patentable. That the defendant has infringed it is so clear as not to admit of doubt, and a reference to the testimony on that point is entirely unnecessary. A decree will be passed sustaining the bill of complaint, and granting the relief prayed for.